UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Toro Company,

        Plaintiff,

v.

MTD Products Inc.,
MTD Consumer Group Inc., and
Cub Cadet LLC,

        Defendants.

Civil No. 10-756 (JNE/TNL)
MEMORANDUM
**(FILED UNDER SEAL)**

---

Richard G. Morgan, Steven L. Reitenour, and Theodore Dorenkamp, Bowman & Brooke LLP, appeared for Plaintiff The Toro Company.

Christopher R. Benson, Mark T. Garrett, and William Andrew Liddell, Fulbright & Jaworski LLP, appeared for Defendants MTD Products Inc., MTD Consumer Group Inc., and Cub Cadet LLC.

---

The Toro Company brought this action for patent infringement against MTD Products Inc., MTD Consumer Group Inc., and Cub Cadet LLC (collectively, Defendants). The patent in suit is U.S. Patent No. 7,032,333 (filed June 18, 2003), titled Snowthrower Chute and Deflector Control. The case is before the Court on Toro's Motion to Strike the Report and Anticipated Testimony of MTD's Patent Expert Stephen G. Kunin, Toro's Motion for Partial Summary Judgment, and Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court grants in part and denies in part each motion.

I.     **Toro's motion to strike Kunin's report and testimony**

Toro asserts that the expert report and anticipated testimony of Stephen Kunin should be excluded because expert opinions on inequitable conduct are improper. Toro contends that Kunin improperly offered opinions on the duty of candor, intent to deceive, materiality of prior

1

art, and the patent examiner's performance. Defendants respond that Kunin's opinions are admissible. To the extent Kunin offered opinions on the duty of candor, intent to deceive, materiality of prior art, and the patent examiner's performance, the Court grants Toro's motion and excludes Kunin's opinions. *See Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 902-04 (D. Minn. 2010). To the extent Kunin offered opinions on practice and procedure before the U.S. Patent and Trademark Office (PTO), the Court denies Toro's motion without prejudice to Toro's ability to seek to exclude the evidence at trial. *Cf. Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 n.5 (Fed. Cir. 2008) (noting that patent lawyer might be able to testify about patent office practice and procedure).

## II. Toro's Motion for Partial Summary Judgment

### A. Inequitable conduct

In their third counterclaim, Defendants assert that the '733 Patent is unenforceable because Toro engaged in inequitable conduct in obtaining the patent. According to Defendants, Toro withheld prior art—the Ariens 1028—from the PTO and made misleading statements in the '333 Patent's background. Toro contends that summary judgment in its favor should be granted on the counterclaim because the Ariens 1028 is not material, Defendants have no evidence that the Ariens 1028 was withheld with the specific intent to deceive the PTO, and the '333 Patent's background is not misleading.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. The accused infringer must prove both elements—intent and

materiality—by clear and convincing evidence." *Id.* at 1287. "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* at 1290. To demonstrate the applicant's specific intent to deceive the PTO in a case involving nondisclosure of information, the accused infringer must establish that the applicant made a deliberate decision to withhold a known material reference:

> "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.

*Id.* (citation omitted). "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* Under certain circumstances, indirect and circumstantial evidence may establish the applicant's intent to deceive:

> Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Id.* at 1290-91 (citations omitted).

Defendants assert that "[s]ubstantial evidence collectively and clearly shows that it would be reasonable to conclude that the single most reasonable inference is that at least one of the persons with a duty of disclosure . . . withheld the Ariens 1028 with the specific intent to deceive the Patent Office." Briefly summarized, the evidence on which Defendants rely to support their assertion indicates that snowthrowers are sold through several retail channels. The mass channel includes large home improvement stores. The dealer channel includes small, dealer-owned

3

stores. Other channels include hardware stores, cooperatives, and farm and country stores. During the 1990s, consumers shifted away from the dealer channel toward the mass channel. Toro had an agreement with a large home improvement store not to sell its snowthrowers at other large home improvement stores. The large home improvement store did not carry Toro's two-stage snowthrower, which remained essentially the same from 1987 to 2002. The large home improvement store did offer two-stage models manufactured by Ariens. Relative to the Ariens models, Toro considered its two-stage snowthrower over-priced and under-featured. In January 2001, Toro started a project to develop a new two-stage snowthrower in hopes of improving its share of the two-stage market and making its entire line of snowthrowers available at the large home improvement store. The individuals who were eventually named as inventors in the '333 Patent were long-term employees of Toro and worked on the project. Snowthrowers manufactured by Ariens were available to the project team, and Toro does not dispute that the inventors knew of the Ariens 1028. The inventors did not tell the prosecuting attorney about Ariens, and they did not disclose the Ariens 1028 to the PTO. According to Defendants, the totality of circumstances reveals an intent to deceive the PTO. The Court disagrees. That the inventors knew of the Ariens 1028, may have known of its materiality, and failed to disclose it to the PTO "is not enough" to show an intent to deceive. *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374-76 (Fed. Cir. 2012). Defendants have not offered evidence that would establish that one with a duty of disclosure, knowing that the Ariens 1028 was material, made a deliberate decision to withhold it.

Defendants' counterclaim also contends that several statements in the '333 Patent's background would have misled the examiner about the state of the prior art. *See Ring Plus, Inc.*

*v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360-61 (Fed. Cir. 2010). Defendants identify the description of how a chute can be rotated as a misleading statement:

> Snowthrowers are known having upright chutes through which a snow stream is thrown. The chute can be rotated on the snowthrower from one side to the other to direct where the snow stream is deposited laterally relative to the snowthrower. Typically, this is done by a manually operated crank which turns the chute through a worm gear engaging a toothed ring on the bottom of the chute. Many turns of the crank are required to turn the chute completely from one side to the other. This can be tiring and inconvenient to do particularly where one must redirect the snow stream frequently as when going back and forth on a driveway or the like.

'333 Patent, col. 1, ll. 16-27. Defendants note that the Ariens 1028 has an elevated gearbox and that one of the inventors could not explain why the above quotation did not describe the elevated gearbox of the Ariens 1028. They conclude that it is reasonable to infer that the '333 Patent would have misled a reasonable examiner to believe the elevated gearbox of the Ariens 1028 was not part of the prior art. The portion of the background on which Defendants rely describes how rotation of a chute is "typically" accomplished. A worm and mating gear located at the base of the chute is "traditional," according to a mechanical engineer retained by Defendants to testify as an expert witness. Noting that none of the snowthrowers before the PTO had an elevated gearbox, the mechanical engineer asserted that the elevated gearbox "would have provided an important advantage over the snowthrowers . . . that had only a traditional worm and mating gear located at the base of the chute." The Court concludes that the '333 Patent's description of how rotation of a chute is typically accomplished is not misleading.

In addition, Defendants maintain that the '333 Patent's background would have misled a reasonable examiner to believe that remote, cable-actuated deflector controls were not part of the prior art. In their Answer, Defendants acknowledged that the prior art disclosed to the PTO included a remote, cable-actuated deflector control. The '333 Patent's description of how a "deflector is usually formed with an integral handle" such that the user "usually" has "to come

5

around from the usual operating position behind the handle of the snowthrower to one side of the snowthrower in order to be adjacent to the deflector to be able to reach the handle on the deflector" to adjust the deflector is not misleading. '333 Patent, col. 1, ll. 28-58.

Viewing the record in the light most favorable to Defendants, the Court concludes that Defendants have not submitted evidence that would prove the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. The Court therefore grants summary judgment in Toro's favor on Defendants' counterclaim of inequitable conduct.

**B.     Infringement**

Toro moves for summary judgment on the issue of infringement. An infringement analysis has two steps. First, the court determines the meaning and scope of the patent claims asserted. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012). Second, the court compares the properly construed claims to the allegedly infringing device. *Id.* Claim construction is an issue of law, and infringement is a question of fact. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1356 (Fed. Cir. 2007).

At the hearing on the parties' motions, Defendants stated that they do not contest the issue of infringement with respect to the accused product that has a cable design. Accordingly, the Court grants Toro's motion insofar as it seeks summary judgment on the issue of infringement with respect to the accused product that has a cable design.

The parties dispute whether the accused product that has a rigid design infringes any of the asserted claims. For the reasons set forth below in the discussion of Defendants' motion, the Court concludes that the accused product that has a rigid design does not infringe any of the asserted claims. Accordingly, the Court denies Toro's motion insofar as it seeks summary judgment on the issue of infringement with respect to the accused product that has a rigid design.

## III. Defendants' Motion for Summary Judgment

### A. Obviousness

Defendants assert that all asserted claims of the '333 Patent are obvious. A patent is presumed valid. 35 U.S.C. § 282 (2006) (amended 2011); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 412 (2007). Consequently, "the evidentiary burden to show facts supporting a conclusion of invalidity, which rests on the accused infringer, is one of clear and convincing evidence." *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007); *see* 35 U.S.C. § 282. A patent may not issue if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2006) (amended 2011); *see KSR*, 550 U.S. at 406. "The ultimate judgment of obviousness is a legal determination" based on underlying factual determinations. *KSR*, 550 U.S. at 427. To determine whether a patent claim is obvious, a court considers (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. *Id.* at 406; *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966). Secondary considerations such as commercial success, long felt but unsolved needs, or the failure of others may also be considered. *KSR*, 550 U.S. at 406; *Graham*, 383 U.S. at 17-18. "Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427. In this case, the factual inquiries into obviousness are in material dispute. The Court denies Defendants' motion insofar as it seeks summary judgment on the issue of obviousness.

7

B.  **Indefiniteness**

Defendants assert that claims 26, 27, and 30 are indefinite because they state apparatus and use limitations. In *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005), the Federal Circuit considered "[w]hether a single claim covering both an apparatus and a method of use of that apparatus is invalid." 430 F.3d at 1384. The claim at issue in *IPXL* is:

> The system of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and the user uses the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* The court held the claim indefinite because it was unclear whether infringement occurs "when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction." *Id.*; see *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1277 (Fed. Cir. 2012); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). Nevertheless, "apparatus claims are not necessarily indefinite for using functional language." *Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008). Here, claim 26, from which claims 27 and 30 depend, states:

> The snowthrower of claim **19**, wherein the latch release is biased by a spring relative to the control handle such that the latch release normally projects outwardly from the control handle the latch release being actuated by the user by compressing the latch release towards the control handle.

Claim 26 uses functional language to describe the structure of the latch release. The Court denies Defendants' motion insofar as it asserts that claims 26, 27, and 30 are indefinite.

## C. Infringement

Toro asserts that the accused product that has a rigid design infringes claims 14-17, 19, 20, 25-27, 30, and 32-36 of the '333 Patent. Of the asserted claims, three are independent: claims 14, 19, and 32. Defendants contend that the accused product that has a rigid design does not infringe any of the asserted claims because its control handle neither moves laterally nor moves along an axis. Even if part of the control handle moves laterally or moves along an axis, Defendants assert that the entire control handle does not.

Claim 14, from which claims 15-17 depend, states:

An improved snowthrower of the type having a chute rotatable about a substantially vertical axis for directing a snow stream, a deflector carried on the chute for pivoting about a substantially horizontal axis for adjusting the trajectory of the snow stream, and a control on the snowthrower for operating the chute and the deflector, wherein the improvement relates to the control which comprises:

> (a) a single control handle carried on the snowthrower for lateral motion and longitudinal motion;
>
> (b) a rotatable arm having an axis which arm is attached to the control handle, wherein the arm is free to rotate on the snowthrower about the axis of the arm as the control handle is moved laterally, the arm being mechanically attached to a drive gear operatively connected to the chute such that lateral motion of the control handle is directly transmitted to and rotates the arm to rotate the drive gear to thereby rotate the chute about the substantially vertical axis; and
>
> (c) a flexible cable extending between and interconnecting the control handle and the deflector such that longitudinal motion of the control handle directly retracts the cable to pull on the deflector to pivot the deflector about the substantially horizontal axis.

In November 2011, the Court concluded that the '333 Patent uses "for lateral motion and longitudinal motion" and "moved laterally" in accordance with their plain and ordinary meanings and that construction of the phrases was not necessary:

> The Court discerns from the intrinsic evidence that lateral pivoting is a type of lateral motion; that longitudinal pivoting is a type of longitudinal motion; and that

9

the '333 Patent uses "for lateral motion and longitudinal motion," "moved laterally," and "longitudinal motion" in accordance with their plain and ordinary meanings. The Court concludes that construction of the phrases is not necessary.

According to a report prepared by an expert retained by Toro to offer opinions on the issue of infringement, the control handle of the rigid design includes a bent metal shaft:

> [T]he control handle is formed from a metal shaft [that] protrudes from a clamshell housing having a slot oriented in the longitudinal direction of the snowthrower travel. In the Rigid Design, the shaft pivots fore and aft along the clamshell slot to pivot the deflector upwards or downwards to direct the discharging snow elevation . . . . [T]he clamshell housing in the Rigid Design does not pivot about its trunions; instead, it remains fixed to the snowthrower.
>
> 58. The metal shaft protruding from the clamshell housing is bent forward, in what is often called a "dogleg," and has a grip attached to its upper portion and a universal joint at its other end . . . . The bend in the shaft in combination with the universal joint simply converts any side-to-side motion of the upper portion of the control handle into rotation of a fixed secondary shaft. Figures . . . show this secondary shaft, attached to the control handle by means of the universal joint. . . .
>
> 59. The control handle in the Rigid Design is able to move side-to-side by pivoting about the axis of the second portion of the dogleg. The control handle is also able to move fore-to-aft by pivoting about the universal joint.

(Footnote omitted.) Similarly, a claim chart attached to the expert's report indicated that the control handle included the bent metal shaft. The report stated that "[t]he universal joint . . . is used to attach the control handle tail section to secondary shaft" and that "[t]he control handle is coupled to the chute by means of a purely mechanical linkage: the universal joint rotating secondary shaft . . . which in turn rotates the drive gear which, through the drivetrain, mechanically rotates the chute."

Viewed in the light most favorable to Toro, the record reveals that the control handle of the rigid design neither engages in lateral motion nor moves laterally. To adjust the direction of the chute, the operator rotates the upper portion of the control handle—the part above the "dogleg"— about the axis of the lower portion of the control handle. Although the upper portion of the control handle may engage in lateral movement or move laterally, the control handle itself

10

does not. The lower portion of the control handle does not engage in lateral movement or move laterally. Claim 14 requires the control handle—not a portion of the control handle—to engage in lateral motion or move laterally. *Cf. Saeilo, Inc. v. Colt's Mfg. Co.*, 26 F. App'x 966, 970 (Fed. Cir. 2002) ("The claim language requires only that the 'lug' be laterally offset from the bore axis. Between 'the entire lug' and 'a portion of the lug,' we think the former is the more natural reading of the plain term 'lug.' When language is used precisely and naturally, a piece or portion of a lug is not a 'lug.'"). Because the control handle does not engage in lateral movement or move laterally, the accused product that has a rigid design does not literally infringe claims 14-17. Toro's conclusory assertion that the motion of the rigid design's control handle is equivalent to that of claim 14's control handle is insufficient to avoid summary judgment. *See PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). The Court grants summary judgment in Defendants' favor on the issue of whether the accused product that has a rigid design infringes claims 14-17.

Claim 19, from which claims 20, 25-27, and 30 depend, states:

An improved snowthrower of the type having a chute rotatable about a substantially vertical axis for directing a snow stream, a deflector carried on the chute for pivoting about a substantially horizontal axis for adjusting the trajectory of the snow stream, and a control on the snowthrower for operating at least one of the chute and the deflector, wherein the improvement relates to the control which comprises:

> (a) a control handle carried on the snowthrower[;]
>
> (b) a first mechanical linkage coupling the control handle to at least a first component from a group of components comprising the chute and the deflector such that movement of the control handle along a first axis mechanically moves the first component;
>
> (c) a positive latch for maintaining the first component in an adjusted position during operation of the snowthrower; and

11

> (d) a latch release movably carried on the control handle and operatively connected to the positive latch for releasing the positive latch when the latch release is actuated by a user by selectively and seperately [sic] moving the latch release relative to the the [sic] control handle.

Claim 32,[1] from which claims 33-36 depend, states:

> An improved snowthrower of the type having a chute rotatable about a substantially vertical axis for directing a snow stream laterally with respect to the snowthrower, a deflector carried on the chute with the deflector being pivotal about a substantially horizontal axis for adjusting the trajectory of the snow stream, and a control on the snowthrower for operating the chute and the deflector, wherein the improvement relates to the control which comprises:
>
> > (a) a single control handle carried on the snowthrower for motion along first and second axes that are spaced apart from the substantially vertical and horizontal axes of the chute and the deflector, respectively, the control handle being manually movable by an operator;
> >
> > (b) a first mechanical linkage coupling the chute to the control handle such that movement of the control handle along the first axis rotates the chute about the substantially vertical axis by transmitting to the chute whatever force is applied to the control handle by the operator directed along the first axis; and
> >
> > (c) a second mechanical linkage coupling the deflector to the control handle such that movement of the control handle along the second axis pivots the deflector on the chute about the substantially horizontal axis by transmitting to the deflector whatever force is applied to the control handle by the operator directed along the second axis.

In November 2011, the Court distinguished "axis" when used with "along" from "axis" when used with "about":

> [T]he intrinsic evidence reveals that the '333 Patent uses "axis" in two different ways. Where the term is used with "about," the parties agree that the term means "a line about which rotation occurs." Where the term "along" is used with "axis," the intrinsic evidence reveals that the term means "a line of direction or motion." The phrase "for motion along first and second axes" means "for motion along first and second lines of direction or motion."

---

[1] In July 2006, a Certificate of Correction changed "a second mechanical indicate" to "a second mechanical linkage" in claim 32.

Defendants contend that the accused product that has a rigid design does not infringe claims 19 and 32, as well as the asserted dependent claims, because the control handle does not move along an axis to rotate the chute. Toro asserts that the control handle does move along an axis to rotate the chute. For essentially the same reasons set forth above, the control handle itself does not move along an axis to rotate the chute. Although the upper portion of the control handle may move along an axis to rotate the chute, the control handle itself does not. Claims 19 and 32 require movement of the control handle—not a portion of the control handle—along an axis to rotate the chute. *Cf. Saeilo*, 26 F. App'x at 970. Because the control handle does not move along an axis to rotate the chute, the accused product that has a rigid design does not infringe claims 19, 20, 25-27, 30, and 32-36. The Court grants summary judgment in Defendants' favor on the issue of whether the accused product that has a rigid design infringes the asserted claims.

**D.     Damages**

   **1.     Marking**

"In cases where a patent owner sells a product embodying the invention, a patent owner may seek damages for infringement occurring during a period in which the accused infringer had actual or constructive notice of the asserted patent." *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005); *see* 35 U.S.C. § 287(a) (2006) (amended 2011) ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."). Defendants contend that Toro cannot recover pre-suit damages because it did not notify them of the alleged infringement before bringing this action and because it failed

to produce evidence that it marked its snowthrowers in compliance with § 287(a). Viewing the record in the light most favorable to Toro, the Court concludes that a reasonable factfinder could conclude that Toro marked its snowthrowers in compliance with § 287(a). The Court therefore denies Defendants' motion insofar as it attempts to limit Toro's damages based on § 287(a).

### 2. Entire market value rule

Defendants contend that Toro is not entitled to use the entire market value theory to calculate its damages because Toro has no evidence that shows the claimed chute control was the basis for consumer demand. "[I]n any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012). Insofar as Defendants move for summary judgment on the applicability of the entire market value theory, the Court denies Defendants' motion without prejudice to Defendants' ability to seek to exclude certain evidence at trial.

### E. Willful infringement

Defendants move for summary judgment on the issue of willful infringement. They maintain that Toro cannot demonstrate that they ignored an objectively high likelihood that their actions constituted infringement of a valid patent. "[A]n award of enhanced damages requires a showing of willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc); *see* 35 U.S.C. § 284 (2006) (amended 2011); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012), *cert. denied*, 81 U.S.L.W. 3389 (U.S. Jan. 14, 2013). "[P]roof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Seagate*, 497 F.3d at 1371. "*Seagate*

established a two-pronged test for establishing the requisite recklessness." *Bard Peripheral Vascular*, 682 F.3d at 1005. "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* "[G]enerally the objective prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement." *Bard Peripheral Vascular*, 682 F.3d at 1005 (internal quotation marks omitted). "[T]he objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to *de novo* review." *Id.* at 1007. "When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable . . . ." *Id.* The Court defers consideration of the objective prong to trial. *See id.* at 1008 ("In considering the objective prong of *Seagate*, the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness."). The Court therefore denies Defendants' motion for summary judgment on the issue of willful infringement.

IV. **Conclusion**

In short, the Court grants in part and denies in part Toro's motion to strike Kunin's report and testimony, Toro's Motion for Partial Summary Judgment, and Defendants' Motion for

Summary Judgment. The Court will issue a separate order that is consistent with this Memorandum.

Dated: February 5, 2013

                                                  s/ Joan N. Ericksen
                                                  JOAN N. ERICKSEN
                                                  United States District Judge